UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**STEPHANIE HOLDEN-FRITSCHE,**
1326 W. River Dr.
Stevens Point, WI 54481

        Plaintiff,

                          Case No. 2026-cv-122

vs.

**UNUM LIFE INSURANCE COMPANY OF AMERICA,**
Registered Agent:
Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison, WI 53717

        Defendant.

---

## COMPLAINT

---

The Plaintiff, Stephanie Holden-Fritsche, by Hawks Quindel, S.C., for her complaint against the above-named Defendant, hereby states as follows:

### PARTIES

1. Plaintiff is an adult resident of the State of Wisconsin and currently resides in Stevens Point, Wisconsin.

2. Defendant, Unum Life Insurance Company of America, on information and belief is a corporation organized under the laws of Maine, licensed to do business in Wisconsin.

3. On information and belief, Defendant administers and insures a long-term disability insurance plan for AIG ("the Plan"), an employee welfare benefit plan

01079188

subject to ERISA as amended, that has been in effect since at least July 1, 2024 and continues to the present time.

## JURISDICTION & VENUE

4.  As described more fully below, this is an action by a participant in an employee welfare benefit plan governed by ERISA to recover benefits due under the terms of the Plan pursuant to ERISA § 502(a)(1)(B).

5.  Jurisdiction over this action is conferred upon this court because the claims herein arise under ERISA.

6.  Venue is proper in the Western District of Wisconsin pursuant to ERISA § 502(e)(2) and 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to these claims occurred in this district and, because, in substantial part, the breaches asserted herein took place in this district.

7.  Plaintiff's administrative remedies have been exhausted as a condition precedent to filing this action.

## FACTS

8.  Plaintiff is a former Business Analyst II B for AIG.

9.  During the course of Plaintiff's employment, Plaintiff became eligible for certain employee benefits, including the long-term disability (LTD) coverage provided by the Plan.

10. Plaintiff ceased working on or about July 9, 2024 due to a right shoulder arthroscopy surgery.

11. Following this surgery, Plaintiff developed chronic regional pain syndrome.

12. Plaintiff applied for short-term disability benefits with Defendant.

13. Defendant approved Plaintiff's claim for short-term disability benefits through the maximum benefit period.

14. Plaintiff subsequently applied for LTD benefits with Defendant.

15. Plaintiff's LTD benefit is worth approximately $3,500.00 per month.

16. Defendant was responsible for determining whether Plaintiff was eligible for LTD benefits.

17. Defendant was responsible for paying Plaintiff's LTD benefits.

18. Defendant approved Plaintiff's claim for LTD benefits from January 7, 2025 until October 30, 2025.

19. By way of a letter dated October 29, 2025, Defendant denied Plaintiff's LTD benefits claim beyond October 30, 2025.

20. In Defendant's denial letter, Defendant stated that Plaintiff was no longer disabled as defined by the policy.

21. Defendant referenced Plaintiff's ability to "drive, ambulate independently, and maintain near-normal range of motion in [her] shoulder" as evidence of her ability to perform the duties of her regular occupation.

22. Defendant stated that Plaintiff's shoulder surgeon, Dr. Joshua Troyer, had stated that Plaintiff could perform the duties of her own occupation on a full-time basis.

23. Defendant stated that Plaintiff's pain management provider had not responded to a request for comment on Plaintiff's capacity to work.

24. Plaintiff timely appealed Defendant's denial of Plaintiff's benefits claim.

25. In Plaintiff's appeal she explained that Unum's denial failed to account for the "severity, frequency, and unpredictable nature of [her] Complex Regional Pain Syndrome (CRPS) flare-ups," which make sustaining any full-time work impossible.

26. Plaintiff also explained that Unum's vocational review mistakenly equated her ability to perform simple activities of daily living intermittently with the ability to perform a full-time job continuously and reliably.

27. Plaintiff explained that her CRPS flare-ups are unpredictable and debilitating; during a flare-up she is incapacitated and unable to sit for prolonged periods of time or maintain mental focus.

28. Plaintiff further explained that because of these flare-ups she is unable to show up reliably and consistently to a full-time job.

29. Plaintiff further noted that she was working with her pain management team to obtain a referral to a highly specialized pain program.

30. Plaintiff submitted a copy of the Function Report she filled out for her Social Security Disability claim, which describes her significant limitations and notes that her "day revolves around managing the severe, unpredictable pain of CRPS."

31. Plaintiff's Function Report notes that her activities are minimal and broken up by frequent rest periods.

32. Plaintiff's Function Report notes that she has developed an extreme fear related to being touched or bumped due to her CRPS, as she experiences overwhelming pain with physical contact.

33. Plaintiff submitted complete medical documentation in support of her disability as part of the appeal, including documentation from her treating doctors.

34. For example, Plaintiff provided a work restriction note from Nicole Wolfgram, NP noting that Plaintiff was "completely incapacitated at this time" due to her CRPS.

35. Plaintiff also provided objective medical evidence of her condition, including photographic evidence of physical trophic changes corroborating her diagnosis of CRPS.

36. In connection with her appeal, Plaintiff also submitted correspondence from her shoulder surgeon, Dr. Troyer who clarified comments that he made to Unum's hired reviewer by phone.

37. Dr. Troyer noted that while Plaintiff could likely perform sedentary work "with regard to her shoulder and nothing else," Plaintiff has "numerous neurologic issues and has been severely affected by complex regional pain syndrome after her surgery" and her other providers' opinions about her functional capacity should also be considered.

38. In contrast to Defendant's statements in the October 29, 2025 denial letter, Plaintiff's pain management provider stated that she was unable to find any

documentation that Defendant had reached out to her for additional information about Plaintiff's condition.

39. Plaintiff submitted all information requested by the Defendant.

40. Defendant failed to consider the issues raised in Plaintiff's appeal.

41. Defendant ignored clear medical evidence of Plaintiff's medical conditions and disability.

42. Defendant did not perform a "full and fair review" of Plaintiff's claim.

43. Defendant failed to notify Plaintiff of the additional material necessary in order for Plaintiff to perfect her claim and an explanation of why that material was necessary.

44. Defendant failed to adequately explain why it rejected specific evidence in Plaintiff's file, including the opinions of Plaintiff's treating providers.

45. Defendant failed to adequately address the combination of Plaintiff's various medical conditions.

46. Defendant failed to engage in a meaningful dialogue with Plaintiff.

47. Defendant failed to adequately explain its reasons for denying Plaintiff benefits.

48. Defendant conducted a selective review of Plaintiff's medical records.

49. Defendant failed to adequately assess Plaintiff's employability before determining that Plaintiff is not sufficiently disabled to qualify for benefits.

50. After having approved benefits, Defendant denied Plaintiff's claim without evidence of improvement in her condition.

51. At all times material to this complaint, Plaintiff has remained disabled as defined by the Plan.

52. At all times material to this case, the Plan has remained in full force and effect.

53. Defendant's denial of Plaintiff's claim for LTD benefits caused Plaintiff to suffer the loss of benefits and to incur expenses.

**FIRST CAUSE OF ACTION:**
**DENIAL OF BENEFITS IN VIOLATION OF**
**SECTION 502(a)(1)(B) OF ERISA**

54. The preceding paragraphs are reincorporated by reference as though set forth here in full.

55. Plaintiff has been and remains disabled, as that term is defined by the Plan.

56. Defendant's decision to deny Plaintiff's benefits was incorrect, as well as arbitrary and capricious.

57. Defendant interpreted and applied the terms and conditions of the Plan in a manner that is inconsistent with the plain language contained therein.

58. Upon information and belief, Defendant inconsistently interpreted the terms and conditions of the Plan from one case to the next.

59. As both the payer of claims and the adjudicator of LTD claim eligibility, Defendant has an inherent conflict of interest.

60. Defendant's denial of Plaintiff's LTD benefits was "downright unreasonable."

61. For these and other reasons, Defendant wrongfully denied Plaintiff's claim for LTD benefits and Plaintiff is entitled to said benefits pursuant to § 502(a)(1)(B) of ERISA.

**WHEREFORE** the Plaintiff, Stephanie Holden-Fritsche, demands judgment from the Defendant for the following:

A. Payment of all retroactive LTD benefits owed to Plaintiff under the terms and conditions of the Plan;

B. A declaration of Plaintiff's continued eligibility for all LTD benefits under the Plan;

C. Prejudgment interest;

D. Reasonable attorney's fees and costs related to the action; and

E. Such other and further relief that the Court deems just and equitable.

Dated: February 17, 2026.

> By: */s/ Brook E. Tylka*
> Brook E. Tylka, WI State Bar No. 1126886
> Attorney for Plaintiff, Stephanie Holden-Fritsche
> Hawks Quindel, S.C.
> 409 East Main Street
> P.O. Box 2155
> Madison, Wisconsin 53701-2155
> Telephone: (608) 257-0040
> Email: btylka@hq-law.com